**2012-1628**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT
_____

**INTERDIGITAL COMMUNICATIONS, INC.,
INTERDIGITAL TECHNOLOGY CORPORATION, and
IPR LICENSING, INC.,**

*Appellants,*

v.

**INTERNATIONAL TRADE COMMISSION,**

*Appellee,*

**and**

**LG ELECTRONICS, INC., LG ELECTRONICS USA, INC., and
LG ELECTRONICS MOBILECOMM USA, INC.,**

*Intervenors.*
_____

Appeal from the United States International Trade Commission
in Investigation No. 337-TA-800.
_____

## APPELLANTS' RESPONSE TO INTERVENORS' COMBINED PETITION
## FOR REHEARING AND REHEARING *EN BANC*
_____

Ron E. Shulman
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Michael B. Levin
WILSON SONSINI GOODRICH
  & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
(650) 320-4929

*Richard P. Bress
Maximilian A. Grant
Bert C. Reiser
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Appellants*
  *Counsel of Record

Dated: September 17, 2013

# INTRODUCTION

LG does not challenge the panel's unanimous conclusion that LG had no plausible basis for claiming that its dispute with InterDigital was subject to arbitration.  Op. 20; Dis. 1-2.  LG insists that the law provided it an unfettered right to derail the International Trade Commission's investigation and delay scrutiny of its infringing activities by advancing a bogus claim of arbitrability, and protests that the panel overstepped its authority by foiling that plan.  The panel correctly and unremarkably rejected those arguments as contrary to law and circuit precedent.  LG asks for *en banc* review, but it identifies no conflict or issue of exceptional importance.  Its petition should be denied.

LG argues that rehearing is warranted because (1) under Section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337, this Court had no jurisdiction to review the Commission's termination of the investigation for arbitration; and (2) this Court should "revisit and overrule" *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed. Cir. 2006), and henceforth require the ITC and district courts to dismiss proceedings before them whenever a respondent or defendant can point to an arbitration agreement between the parties, no matter how blatantly obvious it is that the agreement does not apply to the dispute at hand.  Neither issue warrants rehearing.

1

The first issue is simply too case-specific. LG does not challenge this Court's longstanding precedent, twice ratified by Congress, that an ITC order is appealable when it is, in effect, equivalent to a final determination on the merits. The panel correctly applied that principle—and, more specifically, the Court's follow-on holding in *Farrel Corp. v. ITC*, 949 F.2d 1147, 1151 n.4 (Fed. Cir. 1991), that a termination for arbitration is appealable—to the circumstances of this case. Despite its sometimes sweeping language, LG's jurisdictional argument thus reduces to a quibble over the application of established law. That is not the sort of pervasive legal question that warrants *en banc* review, particularly as ITC terminations for arbitration are exceedingly rare.

LG has long since forfeited the second issue it presents, because LG *affirmatively argued* (and the parties agreed) at every stage of this litigation that *Qualcomm*'s "wholly groundless" inquiry governs whether LG's claim of arbitrability warrants termination of the investigation, and the ITC and panel both expressly based their decisions on that undisputed premise. *See* Op. 18 n.11; A40 n.1, 42; *see also* A115435; A116271. LG therefore is left, once again, contesting the panel's correct and routine application of established law.

Because LG's petition raises no conflict or any question of exceptional importance, its rehearing petition should be denied.

2

## ARGUMENT

## I.   THE PANEL'S DECISION THAT THIS COURT HAS JURISDICTION DOES NOT WARRANT REHEARING

LG asks this Court to rehear the panel's finding that it had jurisdiction to review the ITC's termination for arbitration.  Pet. 5-10.  Under 19 U.S.C. § 1337(c), "[a]ny person adversely affected by a final determination" of the ITC granting or refusing to grant exclusion or cease and desist orders "may appeal such determination" to this Court.  LG's challenge is misguided.  The panel correctly found it had jurisdiction by applying a long line of this Court's precedent under § 1337(c) to the circumstances presented, and in any event ITC orders terminating investigations for arbitration occur too infrequently for their reviewability to warrant *en banc* review.

**1.**  At times, LG appears to argue that § 1337(c) precludes "jurisdiction to review an action taken by the ITC pursuant to authority outside of the four specifically-enumerated subsections"—(d), (e), (f), and (g), which involve only the ITC's authority to enter exclusion and cease and desist orders upon finding a violation.  Pet. 3.  But that position is contrary to nearly four decades of this Court's precedent, and LG ultimately does not pursue it.

Looking to substance over form, this Court has long applied a functional analysis to assess its jurisdiction to review final ITC orders.  Op. 9-13.  Tracing back to *Import Motors, Ltd. v. ITC*, 530 F.2d 940, 944-46 (C.C.P.A. 1976), the

3

Court has consistently recognized its jurisdiction over any ITC order that is "'the *equivalent* of a final determination'" on the merits in the sense that it has "'the same operative effect, in terms of economic impact' as a final determination." Op. 10 (quoting *Import Motors*) (emphasis added). Applying that principle, the Court has found jurisdiction several times where the ITC acted formally under authority outside the enumerated subsections. For example, in *Allied Corp. v. ITC*, 850 F.2d 1573 (Fed. Cir. 1988), this Court reviewed an order issued under a different subsection and rejected "an argument similar to the one made by LG." Op. 13 n.9; *accord Farrel Corp.*, 949 F.2d at 1151 n.4 (termination for arbitration); *Crucible Materials Corp. v. ITC*, 127 F.3d 1057, 1061 (Fed. Cir. 1997) (termination based on consent order under subsection (c)). Thus, the panel correctly recognized that "the source of the authority for a particular ITC action is not necessarily dispositive as to whether a party may appeal that action under § 1337(c)." Op. 13 n.9

Despite some occasionally strong language, LG ultimately accepts this line of cases. *See also* Dis. 3 ("[A]n exception does exist as to the right to appeal determinations that are equivalent to a final determination …."). It could not reasonably do otherwise. As the panel explained, the Court has rightly interpreted the statute in light of the "'general rule that judicial review will not be precluded on the sole ground that specific procedures for judicial review of a particular agency action are not spelled out in a statute.'" Op. 13 (quoting *Allied Corp.*).

The Supreme Court has instructed that this strong presumption is overcome only where there is a "clear" legislative intent to do so, and held that "[t]he right to review is too important" to be curtailed based on an implication drawn from "[t]he mere fact that some acts"—like those in subsections (d), (e), (f) and (g) here—expressly "are made reviewable." *Bowen v. Mich. Acad. Of Family Physicians*, 476 U.S. 667, 671, 674 (1986) (internal quotation marks and citation omitted).

Not only is the Court's general approach to ITC review consistent with Supreme Court doctrine, but principles of *stare decisis* argue strongly against reversing course on such a longstanding statutory interpretation. *See*, *e.g*., *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008). That reluctance is particularly appropriate where, as here, Congress has legislated with knowledge of a court's holdings and left them intact. *See id*. Congress has twice ratified this Court's analytical framework for review of ITC orders. First, in 1988, Congress added to § 1337(c) the authority to terminate investigations "by issuing a consent order or on the basis of a settlement agreement," 102 Stat. 1107, 1213; and second, in 1994, it replaced "settlement agreement" with any "agreement between the private parties to the investigation, including an agreement to present the matter for arbitration," 108 Stat. 4809, 4943-44. Those amendments "ma[de] explicit the [ITC's] authority to terminate investigations" based on parties' private agreements, although it already "follow[ed] such procedures in practice," H.R. Rep. No. 100-

576, at 634 (1988) (Conf. Rep.), and, similarly, ensured appropriate ITC "deference" to parties' arbitration agreements, S. Rep. No. 103-412, at 121 (1994). But in neither instance did Congress modify § 1337(c)'s appellate jurisdictional provision—even though (legislating in 1994 specifically to reverse a different aspect of the *Farrel* decision) Congress was undoubtedly aware of this Court's jurisdictional holdings. The Court has no cause to disturb what Congress left intact. *See Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 782 (1985); *GPX Int'l Tire Corp. v. United States*, 666 F.3d 732, 739 (Fed. Cir. 2011).

**2.** As noted, despite its rhetoric, LG does not ask the Court to overrule its general approach to reviewing ITC orders under § 1337(c). LG argues far more narrowly that, although certain other types of ITC orders issued outside of subsections (d), (e), (f), and (g) are appealable as equivalent to final determinations, terminations for arbitration are somehow uniquely unappealable. This argument challenges *Farrel*'s holding that a termination for arbitration "must be considered a final determination" if it adversely impacts the complainant by inhibiting re-filing a complaint. 949 F.2d at 1151 & n.4.

LG contends that *Farrel* is "not reliable jurisdictional law" because by later giving the Commission express authority to terminate for arbitration in § 1337(*c*)—instead of (d), (e), (f), or (g)—Congress signaled an intent to overrule *Farrel*'s jurisdictional holding and preclude review of such terminations. But the

legislative history does not support that inference.  To the contrary, Congress's

only articulated purpose was to overrule *Farrel*'s *other* holding—*i.e.*, that the ITC

lacked authority to terminate for arbitration at all.  *San Huan New Materials High*

*Tech Inc. v. ITC*, 161 F.3d 1347, 1356-57 (Fed. Cir. 1998).  The committee reports,

for example, stress that the amendment provides for the ITC to "defer[]" to the

parties agreement, S. Rep. No. 103-412, at 121; H. Rep. No. 103-826, pt.1, at 142

(1994)—contrary to LG's suggestion (at 9-10), that it requires *this Court* to defer

*to the ITC*.  LG ultimately *concedes* that nothing in the legislative history expressly

speaks to the "scope of judicial review" or indicates an intent to overrule *Farrel*'s

jurisdictional holding.  Pet. 9 (emphasis omitted).  To the contrary, the 1994

amendment left the jurisdictional language in § 1337(c) intact, thereby ratifying

*Farrel*'s jurisdictional holding, just as the 1988 amendment left intact and thus

ratified the jurisdictional holding of *Allied Corp.*  To the extent that anything

further can be gleaned from the congressional record, it is (as the panel explained

(at 16)) that Congress intended to align ITC practice with the FAA—under which

orders terminating a civil suit for arbitration are appealable.[1]  At a minimum, there

---

[1] LG's assertion to the contrary (at 10 n.2) is mistaken.  Op. 16 (citing uniform precedent showing that, although FAA prohibits appeals where the underlying action is merely *stayed*, it permits them when the action is *terminated*).  And, contrary to LG's argument (at 10), the panel's holding does not remotely suggest that interlocutory denials of termination for arbitration are immediately appealable: the FAA expressly contemplates such interlocutory appeals; § 1337(c) does not.

certainly was no clear congressional intent to curtail the Court's jurisdiction to review the ITC's termination of investigations for arbitration. *See Bowen*, 476 U.S. at 674; *Allied Corp.*, 850 F.2d at 1579-80.

Subsequent case law also confirms that this Court has not viewed the 1994 amendments as overruling *Farrel*'s jurisdictional holding. In 1997, the Court found jurisdiction to review a consent order, the authority for which resides in subsection (c) alongside terminations for arbitration. *Crucible*, 127 F.3d at 1060-61. And in 2005 a panel expressly recognized that *Farrel*'s jurisdictional holding remains good law. *In re Gerdes GmbH*, 159 F. App'x 992, 994 & n.* (Fed. Cir. 2005), *vacated on other grounds*, 163 F. App'x 905 (Fed. Cir. 2006). LG offers no compelling reason for this Court to reconsider that question.

**3.** Contrary to LG's suggestion, Pet. 1 (citing *United States v. Erika, Inc.*, 456 U.S. 201 (1982); *Block v. ITC*, 777 F.2d 1568 (Fed. Cir. 1985); and *Crucible*), 3, 7-8, the decision below does not conflict with any prior decision of this Court or the Supreme Court. The panel applied settled law in finding no clear evidence here of a congressional intent to preclude review—more like *Bowen* than *Erika*. *See* Op. 13-14 & n.10. And the panel found that the specific termination here was akin to a final determination given the adverse impacts—more like *Allied Corp., Farrel*, and *Crucible* than *Block*. *See* Op. 4. The panel recognized that the termination might preclude any further proceeding before the Commission and that the

"'operative effect, in terms of economic impact'" of the order in the meantime—allowing LG to continuing importing with impunity—is no different from a final determination.  Op. 15 (quoting *Import Motors*).  LG believes otherwise. Regardless, the panel's application of established law to the particular facts of this case does not warrant the extraordinary measure of rehearing.

Nor is the question presented of such exceptional practical importance to warrant review absent any conflict.  Between 1994 and 2006, no investigations were terminated for arbitration, *Certain Modified Vaccinia Ankara Viruses*, Inv. No. 337-TA-550, Order No. 26 at 2, 2006 WL 1066635 (Apr. 14, 2006), and there have been only a handful of terminations for arbitration since then.[2]  Whether the Court has jurisdiction to review such rare orders is not a question of pervasive concern warranting *en banc* review.

## II. THE PANEL'S UNANIMOUS CONCLUSION THAT LG'S ARGUMENTS FOR ARBITRABILITY ARE "WHOLLY GROUNDLESS" UNDER *QUALCOMM* DOES NOT WARRANT REHEARING

LG argues that neither the ITC nor the panel should have examined whether its claim to arbitration was "wholly groundless" because the parties agreed to

---

[2] *Certain Pesticides & Products Containing Clothianidin*, Inv. No. 337-TA-635, Order No. 5 (May 20, 2008); *Certain Wireless Communication Chips & Chipsets*, Inv. No. 337-TA-614, Order No. 5 (Oct. 18, 2007); *Certain Nickel Metal Hydride Consumer Batteries*, Inv. No. 337-TA-579, Order No. 4 (May 30, 2007); *Certain Mobile Telephone Handsets, Wireless Communication Devices, and Components Thereof*, Inv. No. 337-TA-578, Order No. 19 (Dec. 5, 2006).

delegate the question of arbitrability to the arbitrator. *See* Pet. 4 ("any judicial inquiry" is improper), 11 ("'Hands-Off' Approach"), 13 ("no room for judicial inquiry"), 14 ("judiciary's involvement is at an end"; "without further judicial review"). According to LG, a respondent may derail an ITC investigation, and delay any remedy of its infringing activities for months or years, based on a facially specious claim of arbitrability and there is nothing the ITC or this Court can do about it. LG contends that *Qualcomm*'s contrary framework, requiring a threshold plausibility determination, is "flaw[ed]" and must be "revisited and overruled." Pet. 13, 11. That issue is not properly presented, however, and LG's backup assertion that the panel erred in its application of the *Qualcomm* standard does not warrant rehearing.

**1.** LG has long since forfeited any argument that the ITC or this Court should not make a "wholly groundless" inquiry. In its original motion for termination and at every stage thereafter, LG contended (and InterDigital agreed) that *Qualcomm*'s "wholly groundless" standard controls. *See* A40 n.1, 42; A116271; A115435. In light of the parties' agreement, the panel "*assume[d]* that the 'wholly groundless' standard applies" and did not definitively resolve the matter. Op. 18 n.11 (emphasis added). LG chose to embrace that standard even though this Court has never held that *Qualcomm* (arising from a district court case) applies to ITC dismissals for arbitration.

Having expressly invited the ITC and this Court to apply the *Qualcomm* standard in this case, LG cannot reverse course after the fact and cry foul. As we explain below, there is no reason for this Court to reconsider *Qualcomm*. But even if there were, its propriety should not be revisited in a case where the panel applied the standard at the parties' joint request. LG's petition for rehearing on this issue is offensive.[3]

**2.** Even if the issue were preserved, *Qualcomm* correctly requires a threshold check before a court (or the ITC) blindly sends a matter to arbitration. As this Court explained in *Qualcomm*, even if the parties have clearly delegated the authority to decide arbitrability to the arbitrator, courts must still be "'satisfied'" at some minimal level that the arbitrability request is not "wholly groundless." 466 F.3d at 1371 (quoting 9 U.S.C. § 3). Otherwise, a party could assert "any claim at all, no matter how divorced from the parties' agreement to force an arbitration that the parties never bargained for or contemplated. *Id.* at 1373 n.5. LG's contrary view that defendants/respondents should be able to derail

---

[3] *See*, *e.g.*, *Pentax v. Robison*, 135 F.3d 760, 762 (Fed. Cir. 1998) ("'[A] party may not raise new and additional matters for the first time in a petition for rehearing.'" (citation omitted)); *Murakami v. United States*, 398 F.3d 1342, 1354 (Fed. Cir. 2005) ("The failure to raise an issue at the administrative level waives the right to appellate review …."); *Checkpoint Sys. v. ITC*, 54 F.3d 756, 760 (Fed. Cir. 1995) ("This court will not review an issue that has not been properly raised before the ITC in a petition for review …."); *Forshey v. Principi*, 284 F.3d 1335, 1358 (Fed. Cir. 2002) (en banc) ("[T]he fact that the appellant specifically urged [below] the legal rule that he now challenges counsels against consideration of the issue.").

ongoing proceedings with frivolous assertions of arbitrability based on *any* arbitration clause in *any* agreement—even one involving a completely different subject or a plainly expired license—would invite gaming and thwart § 1337's purpose to provide "expeditious adjudication" of charges of unfair competition in importation. 19 U.S.C. § 1337(b)(1); *see* Opening Br. 26-28. LG's desire to engage in that kind of behavior does not make the issue worthy of further review.

**3.** Neither *Qualcomm* nor its application here created any conflict among the courts. To the contrary, the only other circuit to address the issue directly expressly adopted the *Qualcomm* approach. *See Agere Sys., Inc. v. Samsung Elecs. Co.*, 560 F.3d 337, 340 (5th Cir. 2009) (applying *Qualcomm*'s "wholly groundless" inquiry to ensure there was a "legitimate argument that [the] arbitration clause covers the present dispute").

None of the decisions LG cites (at 12-15) squarely addresses whether a party can compel arbitration based on a wholly groundless assertion of arbitrability. In the one that comes the closest, *Fantastic Sams Franchise Corp. v. FSRO Ass'n*, the court sent the issue of arbitrability to the arbitrators only *after* first determining that "the relevant language in the arbitration agreements is quite broad" and "'ambiguous'" and, thus, that it was "*conceivable* that an arbitrator" could interpret it to authorize the asserted arbitration. 683 F.3d 18, 23-24 (1st Cir. 2012) (emphasis added). That approach is fully consistent with *Qualcomm*.

12

To the extent they are relevant, several of the other cited cases also support the panel decision. For example, two expressly endorse a court's power to review for plausibility arbitrators' conclusion that a dispute was properly before them, even where (as here) the parties agreed that issue was for the arbitrators to decide. In *Oxford Health Plans LLC v. Sutter*, for example, the Supreme Court recognized that under the FAA courts can set aside an arbitrator's decision construing the scope of an arbitration clause in "limited" circumstances, including "'where the arbitrator[] exceeded [his] powers'" by not "'arguably construing or applying the contract.'" 133 S. Ct. 2064, 2068 (2013) (citations omitted). The Court favorably recounted another recent decision *rejecting* the arbitrator's judgment as to the extent of the arbitration clause because it "lacked *any* contractual basis" and was not "'based on a determination regarding the parties' intent,'" even though the parties agreed that the issue had been assigned to the arbitrator. *Id.* at 2069 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l*, 559 U.S. 662, 673 n.4 (2010)); *see also Schneider v. Kingdom of Thailand*, 688 F.3d 68, 74 (2d Cir. 2012) ("[A] district court considering whether to confirm [an arbitration] award *must review* the arbitrators' resolution of [the arbitration clause's scope] *with deference*." (emphasis added)). Far from supporting LG, these cases refute its argument that no judicial inquiry is permitted when parties delegate an issue to the arbitrators.

None of the other cited cases are inconsistent with *Qualcomm*. In each, the

facts either suggest there was a colorable assertion of arbitrability or, at a
minimum, do not suggest otherwise.  There is no conflict with *Qualcomm* that
could warrant its reexamination.

**4.**  Apparently recognizing it forfeited any frontal challenge to *Qualcomm*,
LG sprinkles language suggesting that it *really* objects only to the way *Qualcomm*
was applied by the panel.  That is a charade, as LG argues throughout that no
threshold inquiry is allowed and asks this Court to overrule *Qualcomm*.

To the extent LG ever criticizes *how Qualcomm* was applied, it suggests in
passing that the panel "went further" than *Qualcomm*'s "cursory 'check'" by
making "intrusive merits findings on arbitrability."  Pet. 11, 14.  Nothing the panel
said or held on that account is remotely worthy of rehearing.  First, this is a
particularly inapt vehicle to reassess *how Qualcomm* applies because the panel
never definitely resolved *whether Qualcomm* applies—it merely "assume[d]" as
much at the parties' urging.  Op. 18 n.11.  Second, in any event, contrary to LG's
assertion, the panel did not endorse or conduct "an invasive judicial inquiry into
the arbitrability issue."  Pet. 13.  Instead, it emphasized that *Qualcomm*'s "wholly
groundless" analysis is a "'*limited* inquiry'" that requires sending a dispute to
arbitration as long as a party has a "'*plausible*'" argument.  Op. 19 (citations
omitted).  Although that inquiry necessarily requires "'look[ing] to the scope of the
arbitration clause and the precise issues that the moving party asserts are subject to

arbitration,'" the panel stressed that it "'need not, and *should not*, determine whether [the moving party's] defense are in fact arbitrable'" lest it "'invade the province of the arbitrator.'"  Op. 17-18 (quoting *Qualcomm*) (emphasis added).[4]

Even on a cursory review of the document, the panel immediately (and correctly) recognized that LG's assertion of an arbitrable licensing dispute arising under the Agreement was wholly groundless because "[t]here simply is no plausible argument that LG's license for 3G products survived the termination of the Agreement."  Op. 20.  And Judge Lourie, though dissenting on jurisdiction, took the unusual step of expressing his agreement with that conclusion.  Dis. 1-2.  As discussed, LG itself does not now challenge that conclusion.  The panel's application of *Qualcomm* to prevent LG from using a bogus claim of arbitrability to derail the ITC investigation does not warrant further review.

## CONCLUSION

For the foregoing reasons, LG's rehearing petition should be denied.

---

[4] LG no longer contends (as it initially did to the panel) that the *Qualcomm* inquiry may not overlap with the merits of the underlying license defense (*i.e.*, whether LG has a continuing 3G license under the Agreement).  But to the extent the ITC continues to so argue in its response to LG's petition, that position is also baseless.  The panel had to consider whether the dispute plausibly arose under the license agreement to decide whether LG's claim of arbitrability was wholly groundless.  The Supreme Court and many circuits have observed that such inquiries sometimes will necessarily—and permissibly—overlap with the merits.  *See*, *e.g.*, Opening Br. 23-26; Reply Br. 14-17; *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205-10 (1991).  The panel's approach was fully consistent with those precedents.

Dated: September 17, 2013

Respectfully submitted,

/s/ Richard P. Bress

Ron E. Shulman
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Michael B. Levin
WILSON SONSINI GOODRICH &
ROSATI
650 Page Mill Road
Palo Alto, CA 94304
(650) 320-4929

*Richard P. Bress
Maximilian A. Grant
Bert C. Reiser
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Appellants*
   *Counsel of Record

# CERTIFICATE OF INTEREST

Counsel for Appellants certifies the following:

1.  The full name of every party or amicus curiae represented by me is:

    InterDigital Communications, Inc. (formerly InterDigital Communications, LLC); InterDigital Technology Corporation; and IPR Licensing, Inc.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    InterDigital Communications, Inc. (formerly InterDigital Communications, LLC); InterDigital Technology Corporation; and IPR Licensing, Inc.

3.  All party corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    InterDigital, Inc. (a publicly held company) is the parent corporation of InterDigital Communications, Inc. (formerly InterDigital Communications, LLC), and InterDigital Holdings, Inc.  InterDigital Holdings, Inc. is the parent corporation of InterDigital Technology Corporation and IPR Licensing, Inc.

4.  The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or agency or are expected to appear in this court are:

    **Latham & Watkins LLP:** Richard P. Bress, Maximilian A. Grant, Bert C. Reiser, Matthew J. Moore, Ron E. Shulman, Michael A. Ladra, Dean G. Dunlavey, Julie M. Holloway, Adam M. Greenfield, Lisa K. Nguyen, Dale Chang, Andrew J. Fossum, Ethan Y. Park, Elizabeth V. Johnson, Matthew D. Aichele, Gabriel K. Bell, Marissa R. Boynton, Thomas J. Haldorsen, Milad R. Hassani, Tim B. Henderson, Allison M. Herron, Elizabeth V. Johnson, Everett C. Johnson, Jr., Mark Koehn, Daniel I. Levy, Clara M. Martone-Boyce, Matthew T. Mercier, Milton A. Miller, Elizabeth M. Roesel, Barry M. Sabin, Katherine A. Schettig, Daniel L. Shores, Aaron C. Summer, Matthew K. Telford, David D. Troutman, Michelle P. Woodhouse, Nabeel A. Yousef, Katya Cronin née Georgieva, Jonathan Link, Thomas Yeh, Chris Koepsel, Shoney Blake, Timothy O'Brien,

1

Michael A. David (former), Inge A. Osman (former), Damon Andrews (former), Aslan Baghdadi (former), Rebecca Giltner (former), Franklin D. Kang (former), and Heidi Stack (former).

**Wilson Sonsini:** David S. Steuer, Michael B. Levin, Maura L. Rees, Larry L. Shatzer, Nicole Stafford, Brian A. Dietzel, Lucy Yen, Albert Shih, Randall C. Miller, Aden M. Allen, Jose A. Valera, Matthew K. Sumida, Matthew R. Reed, Kirin K. Gill, Veronica S. Ascarrunz, Corina I. Cacovean, Shaun R. Snader, Catherine X. Shiang, Riana S. Pfefferkorn, Nancy L. Zhang, Natalie Morgan, and Kristen A. Kemnitzer (former).


Dated: September 17, 2013                    Respectfully submitted,


                                             /s/ Richard P. Bress
                                             Richard P. Bress
                                             LATHAM & WATKINS LLP
                                             555 Eleventh Street, NW
                                             Suite 1000
                                             Washington, DC 20004

                                             *Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2013, I caused a copy of Appellants' Response to Intervenors' Combined Petition for Rehearing and Rehearing *En Banc* to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

/s/ Richard P. Bress
Richard P. Bress